IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

vs.                                                                                     NO. CR 14-1261 RB

**PAWAN KUMAR JAIN,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's (Dr. Jain's) Motion to Revoke or Amend the Magistrate Judge's Detention Order. (Doc. 28). A hearing was held on July 31, 2014. Having considered the record, submissions of counsel, and being otherwise fully advised, the Court grants this motion with conditions.

**I.     Background**

Dr. Jain is charged with 111 counts, including: two counts of unlawful dispensing of controlled substances resulting in death, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); two counts of health care fraud resulting in death, in violation of 18 U.S.C. § 1347(a); fifty-seven counts of dispensing controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and fifty counts of health care fraud, in violation of 18 U.S.C. § 1347(a). (Doc. 2). On April 23, 2014, Pretrial Services recommended that Dr. Jain be released on a $100,000 surety bond and additional conditions. After a detention hearing, United States Magistrate Judge Gregory B. Wormuth found that Dr. Jain presented a flight risk and ordered him detained pending trial. (Doc. 20).

Dr. Jain appealed the detention order. (*Id.*) The United States opposes the appeal. (Docs. 29 and 32).

## II.     Standard

The Court reviews a magistrate judge's detention order de novo. 18 U.S.C. § 3145(b); *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003). When, as here, the indictment charges a violation of the Controlled Substances Act carrying a maximum term of imprisonment of ten years or more, there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A). Once the presumption is invoked, the burden of production shifts to the defendant. *United States v. Stricklin*, 932 F.2d 1353, 1354-55 (10th Cir. 1991) (per curiam). Nevertheless, the burden of persuasion always remains on the government to establish that the defendant should be detained as a flight risk or a danger to the community. *Id.*; *United States v. Lutz*, 207 F. Supp. 2d 1247, 1251 (D. Kan. 2002).

In deciding whether the government has satisfied this burden, the Court must consider: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence; (3) the history and characteristics of the person (including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, or record concerning appearance at court proceedings); and (4) the nature and seriousness of the danger to any person or the community posed by the person's release. 18 U.S.C. § 3142(g). The court must impose the least restrictive condition or combination of conditions to reasonably assure the person's appearance. *See* 18 U.S.C. § 3142(c)(1)(B).

**III.     Discussion**

When applying the first factor, the Court considers the nature and circumstances of the offenses. The Indictment charges Dr. Jain with, *inter alia*, two counts of unlawful dispensing of controlled substances resulting in death, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). If convicted of these charges, Dr. Jain would be subject to a mandatory minimum sentence of twenty years imprisonment. *Id*. The drugs involved are Schedule II controlled substances, which places them in the same category as cocaine and methamphetamine. *See* 21 U.S.C. § 812(b)(2). The fact that Dr. Jain was a licensed physician when he prescribed the medications does not necessarily negate the charges as the Grand Jury found probable cause to believe that Dr. Jain unlawfully prescribed the drugs. *See United States v. Moore*, 423 U.S. 122, 124 (1975) (holding that "physicians can be prosecuted under § 841 when their activities fall outside the usual course of professional practice."). In that the offenses charged in the Indictment involve death and dangerous substances, the first factor weighs in favor of detention.

As to the second factor, the Court agrees with Judge Wormuth's assessment that the weight of the evidence is not overwhelming. The Controlled Substances Act prohibits a person from dispensing or distributing a controlled substance. *United States v. MacKay*, 715 F.3d 807, 814 (10th Cir. 2013); 21 U.S.C. § 841(a)(1). However, a physician is exempt from this prohibition as long as he is registered and acting as authorized. *MacKay*, 715 F.3d at 814 (citing 21 U.S.C. §§ 802(21), 822(b)). At trial, the jury must determine whether Dr. Jain prescribed the controlled substances either outside the usual course of medical practice or without a legitimate medical purpose. *United States v. Nelson,* 383 F.3d 1227, 1231-33 (10th Cir. 2004) (citing 21 C.F.R. § 1306.04(a)). Notably, the standard for criminal liability in this sort of case requires "more than

proof of a doctor's intentional failure to adhere to the standard of care." *United States v. Feingold*, 454 F.3d 1001, 1011 (9th Cir. 2006); *See also United States v. Tran Trong Cuong*, 18 F.3d 1132, 1137 (4th Cir. 1994) (explaining that a criminal conviction "requires more" than a showing of malpractice). Instead, "[a] practitioner becomes a criminal not when he is a bad or negligent physician, but when he ceases to be a physician at all." *Feingold*, 454 F.3d at 1011. The trial will involve the testimony of expert witnesses on complex medical issues. Because the outcome is by no means certain, the second factor weighs against detention.

The third factor, which compels an evaluation of the history and characteristics of the defendant, weighs strongly in favor of release. Dr. Jain is 62 years old. He has several health problems including diabetes and heart disease. Dr. Jain is highly educated and has practiced medicine for many years. He has no history of alcohol or drug abuse. He has no criminal record other than an arrest for domestic assault in 2008. Although he was born, raised, and educated in India, Dr. Jain became a naturalized United States citizen in 1992. He has lived in Las Cruces since 1999 and has operated a busy medical practice.

During the course of his career, Dr. Jain accumulated significant financial assets and he has taken steps to shield these assets from creditors. The Government argues that these legal maneuvers constitute evidence of a flight risk, but they may also be viewed, more benignly, as an attempt to maintain financial security. The Court finds it highly significant that Dr. Jain's son, Samat Jain, and ex-wife, Annamma Jain,[1] are willing to pledge these assets to secure Dr. Jain's appearance. Contributing to the calculus is the fact that Dr. Jain proposes to liquidate his retirement account and post a $500,000 cash bond with the Court. The fact that Dr. Jain asked his son to locate a black bag containing cash hidden in a closet and deposit the money does not,

---

[1] The Pretrial Services Report refers to Dr. Jain's ex-wife as Annamma Jain but Dr. Jain's brief refers to her as Anna Phillips. (Doc. 28 at 25).

4

necessarily, support the notion that Dr. Jain intends to flee. A person who intended to flee would be better served with money in cash rather than in a bank. The Government points out that Dr. Jain obtained a Certificate of Registration of Overseas Citizen of India, which is analogous to a visa. However, it is undisputed that Dr. Jain would need his United States Passport to travel to India. The Court does not view Dr. Jain's statement at the §341 bankruptcy meeting regarding his intent to seek employment in India as significant due to its context. It is not surprising that a debtor would attempt to allay the concerns of his creditors at such a meeting. The Court finds it material that no evidence was presented that Dr. Jain would be authorized to practice medicine in India or any other country due to the charges and the status of his New Mexico medical license. In sum, as to the third factor, consideration of the evidence of record leads to the conclusion that Dr. Jain's history and personal characteristics weigh strongly in favor of release on conditions.

The final statutory factor also weighs in favor of release. As no evidence was presented that Dr. Jain would be able to prescribe medication, Dr. Jain does not pose a danger to the community.

**III.  Conclusion**

The Court appreciates Judge Wormuth's concerns. However, the Court was presented with a significantly different picture than was Judge Wormuth. At the detention hearing, Dr. Jain offered to post $100,000 with the Court and his family offered to pledge additional assets. (Doc. 28-1 at 8). At the July 31 hearing, Dr. Jain suggested a bond of $500,000 secured by cash gained from liquidating his retirement account and the balance to be secured by the property of his ex-wife and son. In order to reasonably assure Dr. Jain's appearance, the Court has increased the bond by an additional $500,000. The importance of the additional bond is two-fold: (1) it increases the likelihood that Dr. Jain will appear as required; and (2) it reduces the resources available to him

should he choose to flee.

In light of the changed circumstances, Dr. Jain has satisfied his burden of production to overcome the presumption of detention. Additionally, the Government has not satisfied its burden of persuasion that Dr. Jain is a flight risk or a danger to the community. It bears underscoring that detention should be ordered on the ground that the defendant presents a flight risk only if "no condition or combination of conditions will *reasonably assure* the appearance." 28 U.S.C. § 3142(e) (emphasis added). Given that the standard is "reasonably assure" appearance, rather than "guarantee" appearance, *see United States v. Orta*, 760 F.2d 887, 892 (8th Cir. 1985), the appeal will be granted.

The Court finds the following combination of factors will reasonably assure Dr. Jain's appearance and the safety of the community. Dr. Jain will

1. Be released on a $1,000,000 bond consisting of $500,000 cash bond and the balance secured by the property of Annamma Jain and Samat Jain;

2. Be placed in the third-party custody of Annamma Jain, 5545 Remington Road, Las Cruces, New Mexico 88011, and phone number (575) 644-2657;

3. Participate in the location monitoring program as directed by Pretrial Services and comply with all of the program requirements and instructions, employing radio frequency (RF) technology and home detention. Dr. Jain may be required to pay a portion or all costs of such program;

4. Surrender his passport and all international travel documents issued by any country to Pretrial Services;

5. Not obtain a passport or other international travel documents;

6. Not use alcohol;

7. Not unlawfully possess a narcotic drug or other controlled substance defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner;

8. Not possess a firearm, destructive device, or other dangerous weapon;

9. Advise the Court or Pretrial Services in writing before making any change of residence or

telephone number;

10. Report for supervision to Pretrial Services as directed;

11. Appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose;

12. Report within 24 hours to Pretrial Services every contact with law enforcement personnel, including arrests, questioning, and traffic stops;

13. Avoid all contact, directly and indirectly, with any person who is or may be a victim or witness in the investigation or prosecution;

14. Abide by the following restriction on travel as directed by Pretrial Services: Travel is restricted to the county of residence;

15. Not violate any federal, state, or local law while on release;

16. Cooperate in the collection of a DNA sample if the collection is authorized by 42 U.S.C. § 14135a;

17. Provide access to requested financial information;

18. Not open new lines of credit without the prior permission of Pretrial Services;

19. Allow access to any requested financial information, including income tax returns, and authorized credit bureau inquires as requested by Pretrial Services.

**IT IS SO ORDERED.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**