IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CRIMINAL NO. 14-CR-1261 RB |
| | ) |
| PAWAN KUMAR JAIN, | ) |
| | ) |
| Defendant. | ) |

**UNITED STATES' SENTENCING MEMORANDUM**

The United States hereby respectfully requests that the Court accept the parties' plea agreement, entered into by the parties on February 11, 2016. (Doc. 81). Further, the United States requests that the Court sentence the defendant to 108 months (9 years), the high end of the agreed-upon sentencing range, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). (Doc. 81.)

**I.   BACKGROUND**

On July 23, 2015, the defendant was charged by the Grand Jury in a 138-count Second Superseding Indictment with unlawful dispensing of a schedule II controlled substance (Counts 1, 3, 5, and 6 also charge resulting deaths), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and health care fraud (Counts 2, 4, and 7 also charge resulting deaths), in violation of 18 U.S.C. § 1347(a). (Doc. 65.) The Court entered an Order declaring this case complex on April 30, 2014, following the original Indictment, which was filed on April 16, 2014, and the defendant's

arrest on April 17, 2014.  (Doc. 2.)  On February 11, 2016, the defendant pled guilty, with the benefit of a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), to the lesser included offense in Count 1 of unlawful dispensing of a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C); and to the lesser included offense in Count 2 of health care fraud.  By entering the plea agreement, the defendant has reduced his sentencing exposure for Count 1 from a mandatory minimum of 20 years with a maximum of life imprisonment, to a statutory maximum sentence of 20 years of imprisonment.  Additionally, he reduced his sentencing exposure for Count 2 from any term of imprisonment including life imprisonment, to a statutory maximum of 10 years.

The pre-sentence report (PSR) was disclosed on December 12, 2016.  (Doc. 83.)  On April 2, 2018, the defendant filed his formal objections to the PSR.  (Doc. 87.)  After seeking and receiving an extension of time to respond to the objections, the government filed its response to the defendant's PSR objections on May 21, 2018.  (Doc. 96.)

The Court held an evidentiary hearing as to the defendant's objections to the PSR, which began on November 20, 2018, and continued on December 5 and 6, 2018.  Following the hearing, and after receipt of the parties' separate proposed findings of fact and conclusions of law (Docs. 115 and 116), on March 11, 2019, the Court entered its findings of fact and conclusions of law and denied the defendants objections, with which the government concurs. (Doc. 117).  The defendant's sentencing hearing is set on May 9, 2019, and this memorandum is filed in advance thereof and in support of the government's request that the Court impose a sentence of 108 months.

## II. THE COURT'S FACTUAL FINDINGS AND LEGAL CONCLUSIONS SUPPORT A SENTENCE OF NINE YEARS.

The Court has heard extensive testimony, reviewed the pleadings filed by the parties, and is familiar with the facts of this case.   Therefore, the facts are not repeated in detail here.

All of the prescriptions that the defendant wrote to MEB, ND, RB, TB, MJB, SC, AU, LD, BL, and LT, which are charged in the Second Superseding Indictment "were issued outside the usual course of medical practice and without a legitimate medical purpose" and are relevant conduct for sentencing purposes.   (Doc. 117, at pages 15-16.)   Not only was MEB a vulnerable victim, but all of the other patients named in the Second Superseding Indictment also were vulnerable, which warrants a two-level upward adjustment, pursuant to USSG § 3A1.1(b).   (Doc. 117 at 20-23.)

Furthermore, neither MEB, ND, RB, nor TB would not have died but for the prescriptions each received from the defendant, on the dates listed in Counts 1-7 of the Second Superseding Indictment, which also is relevant conduct for the Court to consider in making its sentencing determination.   (Doc. 117 at 16, 23-24).   The United States agrees that this conclusion does not mandate a sentence at the high-end of the statutory maximum, nor does the government seek a sentence at or near the statutory maximum of 20 years for Count 1.   Yet this remains an important factor for the Court to consider

The United States concurs with the Court's findings of fact and conclusions of law, and agrees that the final adjusted offense level is 33 which, combined with a criminal history category of I, results in an advisory guideline sentencing range of 135 to 168 months (11 ¼ years to 14 years).   A sentence within this range could be warranted, to avoid unwanted disparity with

similarly situated defendants.   However, the parties agree that there are circumstances that warrant a lesser sentence.   A sentence of 108 months (9 years) is appropriate in this case and is supported by the Court's findings and conclusions.

### III.  THE SECTION 3553(a) SENTENCING FACTORS SUPPORT A SENTENCE OF NINE YEARS.

After *United States v. Booker,* 543 U.S. 220 (2005) and *Rita v. United States,* 551 U.S. 338 (2007), the Supreme Court left intact all other provisions of the Sentencing Reform Act, including 18 U.S.C. § 3553(a).   Section 3553(a) continues to require sentencing judges to take certain factors into account when imposing a sentence, including "the kinds of sentence and the sentencing range established" by the guidelines. 18 U.S.C. § 3553(a)(4).   Therefore, the Court has an obligation to craft a sentence that sufficiently accounts for the sentencing factors and objectives outlined in 18 U.S.C. § 3553.

The Court must consider the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1).   The Court should then fashion a sentence that reflects the seriousness of the offense; promotes respect for the law; and provides just punishment. 18 U.S.C. § 3553(a)(2).   The sentence should also adequately deter the defendant from committing further crimes; deter others similarly situated; protect the public from the defendant; and provide necessary education and treatment.  *Id.*   When formulating its sentence, the court must also avoid unwarranted sentencing disparities between defendants with similar records who have been convicted of similar criminal conduct. 18 U.S.C. § 3553(a)(6).

As noted by the Supreme Court, the guideline range is the benchmark and starting point for any federal sentence.  *Gall v. United States,* 552 U.S. 38, 49 (2007).   "Before a departure is

permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline." *Koon v. United States,* 518 U.S. 81, 98 (1996). "[W]hether the particular case lies within the heartland of similar offenses is a threshold question that a district court must decide when determining whether to grant a departure under the Guidelines." *United States v. Martinez-Barragan,* 545 F.3d 894, 900 (10th Cir. 2008). This type of "heartland analysis is *also* a legitimate part of the district court's analysis of whether to vary from the Guidelines" under 18 U.S.C. § 3553. *Id.* (emphasis in original).

The parties have already negotiated a sentence below the correctly calculated guideline range. For the reasons stated herein, the United States asserts that a sentence of 108 months would be sufficient, but not greater than necessary to comply with the sentencing factors in 18 U.S.C. § 3553(a), and the United States opposes any further downward departure or variance.

    a. *Nature, Circumstances, and Seriousness of the Offense*

The "starting point and initial benchmark" for sentencing must be the defendant's criminal conduct. USSG Ch. 5, Pt. H, intro. Comment (citing *Gall*, 552 U.S. at 49). The government often cites to *Harmelin v. Michigan*, 501 U.S. 957, 1002 (1991), for the proposition that the "possession, use, and distribution of illegal drugs represent one of the greatest problems affecting the health and welfare" of this country. Furthermore, the Tenth Circuit held in *United States v. Carr,* 939 F.2d 1442, 1448 (10th Cir. 1991), not only that "[d]rug trafficking crimes are serious" but also that any attempt to describe drug distribution as "victimless . . . is false to the point of absurdity." *Id*. In light of the facts in this case, the government asserts that this also is true of the unlawful prescribing of legal drugs in this country, particularly those highly addictive

narcotic drugs prescribed for pain.   That the drugs in this case – methadone, oxycodone, morphine, hydromorphone, and Adderall – were legal drugs that were illegally distributed by a licensed physician makes them no less dangerous, and the crimes no less serious, than those committed by a heroin dealer peddling to an addict.   As the Court heard from Dr. Hail and Dr. Owen, these drugs are highly addictive and they carry serious side effects and risk of death. Here, perhaps more than in any other drug case before this Court, there are certainly victims. Four people – MEB, ND, RB, and TB – each are dead because of the defendant's illegal drug distribution.

Though not required, the Guidelines "permit[] a sentencing court to depart from the guideline range if the defendant's conduct resulted in death. In determining the extent of a departure a court should consider: (1) "the defendant's state of mind," (2) "the degree of planning or preparation," (3) "whether multiple deaths resulted," (4) "the means by which life was taken," (5) "the dangerousness of the defendant's conduct," (6) "the extent to which death or serious bodily injury was intended or knowingly risked," and (7) "the extent to which the offense level for the offense of conviction ... already reflects the risk of personal injury."   *United States v. Bollinger*, 893 F.3d 1123, 1125 (8th Cir. 2018) (*citing* USSG § 5K2.1.)   *See also United States v. Montgomery*, 550 F.3d 1229, 1237 (10th Cir. 2008) (holding that an upward departure was warranted because the defendant's illegal possession of firearms resulted in his wife's suicide.)

During the course of the hearing on the defendant's objections, the Court heard from family members who expressed the depth of their loss at the hands of the defendant.   The Court heard from Mrs. Pane, MEB's daughter, that MEB's death was not only on Christmas Day,

*United States v. Pawan Kumar Jain*, 14-CR-1261
United States' Sentencing Memorandum
Page **6** of **11**

December 25, 2009, it was also Mrs. Pane's 22nd birthday, only a week after her brother's 18th birthday, and that MEB's children "don't enjoy the holidays the same.  There is a black cloud that my brother and I have."  II Tr. at 69. [1]  Mrs. Pane gave this description after expressing her regret that she was not mature enough to express to her mother, before she died, all the gratitude and love Mrs. Pane wishes she could express now.  II Tr. at 68.  Mrs. Pane went on to tell the Court and the defendant,

> It aches my soul that my kids don't remember her. Or that my niece, who looks identical to my mother, will never meet her grandma. It's a tragedy that they'll never get the chance to have their grandma take them on mountain hikes or to the lake. For nine years, she has been gone and the pain is still the same.

II Tr. at 69.

LD told the court about her own addiction, and the difficult process of getting through withdrawals to get off of the pain medication she received from the defendant, and that now that she is off of pain medication, she feels "Very good."  II Tr. at 31, 34-35, 39-41.

SC's sister, Ms. Clark, read a joint statement on behalf of all of their family.  Ms. Clark told the Court, "Not only did I lose my only sibling, I lost my best friend.  Some say it takes time, but for us, it only gets worse."  III Tr. at 42-43.  Ms. Clark continued, "My life and the lives of all the people who love Serina have been changed forever. She was not only my sister, she was a daughter, a mother, and a soon-to-be aunt to my twins.  The death of my sister caused emotional, physical, and financial stress on our family."  III Tr. at 43.

The Court heard from Mr. Schavier that his mother, BL, was a big part of his life and

---

[1] Citations to "_____ Tr. at _____" are to the volume and page numbers of the three volumes of the transcript of the three days of the evidentiary hearing, which are filed on the docket as Doc. 110, Doc. 111, and Doc. 113, respectively.

when she was taking the prescriptions that she received from the defendant, she "lost a lot of her drive for life….She was more secluded.  She stayed home. She didn't want to do as much."  I Tr. at 253-255.

The seriousness of the defendant's offenses in this case is measured by the quantity of drugs he prescribed.  The combined weight of the controlled substances prescribed by the defendant totals 2,338.53 kilograms of converted drug weight.  However, there is no quantifiable measure, calculation, or conversion in the Sentencing Guidelines to account for the pain and loss experienced by the families of MEB, ND, RB, and TB, nor the loss of time, connection, and relationships experienced by the defendant's patients and their loved ones who watched their family members withdraw and deteriorate due to addiction.  While the United States honors its plea agreement and is not seeking a sentence within, let alone above, the advisory range, the Court should consider the provision outlined in USSG § 5K2.1, and sentence the defendant at the top of his agreed-upon range.  A sentence of 108 months strikes an appropriate balance that reflects the seriousness of the Defendant's criminal behavior, but also considers other factors under 18 U.S.C § 3553(a).

      b. *History and Characteristic of the Defendant*

The defendant was born in India and obtained his initial medical training there, and in Europe, before coming to the United States and later becoming a naturalized United States citizen.  While counsel for the government has not seen the defendant's final sentencing memorandum at the time of this filing, counsel anticipate, based on the sentencing letters submitted on November 19, 2018, that the defendant will argue for a time served sentence based

upon his age, medical conditions, lack of criminal history, as well as his kindness and support of his family members.  (Doc. 105.)   At the time of the defendant's sentencing hearing, he will have been in custody for just a few weeks more than five years.

The United States acknowledges that the defendant has no criminal history.   It is for this reason that he is in Criminal History Category I, and his guideline range is not higher.   However, this factor does not warrant a further variance below 108 months in this case for several reasons.   First, the defendant's lack of criminal history has already been factored into his guideline calculation.   Furthermore, the defendant's age and medical condition can be accounted for in the 27 month variance from the 135 months to 108 months, which is afforded by the 11(c)(1)(C) agreement.   However, further variance is unwarranted based on age, medical issues, and lack of criminal history.

Furthermore, should the defendant ask the Court to depart to a time-served sentenced based on aberrant conduct under USSG § 5K2.20,[2] the Court should find that such a departure is not appropriate in light of his commission of a serious drug offense and the lengthy time period that encompasses his relevant conduct.   For the same reasons that a Guideline departure for aberrant behavior is not appropriate in light of this serious and lengthy drug offense, the Court should decline the defendant's request to consider a § 3553 reduction based on aberrant behavior in this case.

---

2 "The court may depart downward under this policy statement only if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation from an otherwise law-abiding life."   USSG § 5K2.20(b).

   c. *The Need for the Sentence Imposed to Promote Respect for the Law, Provide Just Punishment, Adequate Deterrence and to Protect the Public from Further Crimes of the Defendant*

In violation of the "first do no harm" principle of medicine, as well as the laws of this country, the defendant failed to meet the standard of care for treating patients and instead illegally distributed large quantities of Schedule II controlled substances. The defendant's felony drug trafficking conviction itself will achieve some of Congress' sentencing goals. This conviction will deter the defendant from committing further crimes of this type, as he has lost his medical license and DEA registration number, and will not be allowed to practice medicine or prescribe ever again. A sentence of 108 months will certainly promote respect for the law by the defendant and among other practitioners in the community, and provide just punishment, which will serve to protect the public. *See* 18 U.S.C. § 3553.

   d. *The Need to Avoid Unwarranted Sentencing Disparities Between Defendants Who Have Committed Similar Crimes*

A sentence of 108 months in the instant matter is necessary in order to avoid further unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6). The sentencing guidelines set a range of 135 to 168 months for a defendant with the present criminal history category and who is guilty of the present offense. The parties have agreed to a range below the Guideline range, and a sentence of 108 months adequately accounts for the defendant's own history and characteristics, as well as the seriousness of his offenses.

## IV. CONCLUSION

The defendant pled guilty to a serious drug trafficking offense. Four people are dead as a direct result of the defendant's prescriptions. A sentence of 108 months will be sufficient, but not greater than necessary to achieve Congress' sentencing goals, set forth in 18 U.S.C. § 3553. However, the United States objects to a sentence of less than 108 months, as such a sentence will not be sufficient to adequately address the seriousness of this offense, to promote respect for the law, provide just punishment, and to protect the public from the defendant and other doctors like him.

WHEREFORE, the United States respectfully request that the Court accept the parties Rule 11(c)(1)(C) plea agreement and sentence the defendant to 108 months.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

*Electronically Filed 4/15/19*
SARAH M. DAVENPORT
RICHARD C. WILLIAMS
Assistant United States Attorneys
200 North Church Street
Las Cruces, New Mexico 88001
(575) 522-2304

I HEREBY CERTIFY that I electronically filed the foregoing using the CM/ECF system which will send notification to defense counsel of record.

*Electronically Filed 4/15/19*
SARAH M. DAVENPORT
Assistant United States Attorney